[Cite as *State v. Hopkins*, 2023-Ohio-2816.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-11-074 |
| - vs - | : | O P I N I O N<br>8/14/2023 |
|  | : | |
| JANET L. HOPKINS, | : | |
| Appellant. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2021 CR 00735

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Janet Hopkins, appeals a decision of the Clermont County Common Pleas Court committing her to a mental health treatment facility for a period not to exceed 16 and one-half years. For the reasons discussed below, we affirm the decision of the common pleas court.

{¶ 2} In August 2021, Hopkins was charged with aggravated arson, inducing panic, and tampering with evidence. The charges arose from an incident in which Hopkins set fire to clothes in her closet, laid on her bed, and told first responders that she wanted to "burn herself up." A number of residents in the multiple-unit apartment complex, including a resident with mobility issues, had to be evacuated from neighboring apartments.

{¶ 3} After ordering psychological evaluations, the trial court determined that Hopkins was incompetent to stand trial and she was committed to Summit Behavioral Health. When Hopkins was unable to be restored to competency within the one-year statutory period, the state filed a motion to retain jurisdiction over Hopkins and commit her to a treatment facility.

{¶ 4} After a hearing, the trial court determined that Hopkins committed the offenses, that she remained mentally ill, and that she was subject to court-ordered treatment for a term of up to 16 and one-half years. The trial court's determination of the maximum possible years of commitment was based on its finding that the maximum prison term Hopkins could have received for the most serious offense for which she was charged was currently 16 and one-half years with the Reagan Tokes amendments to the sentencing statutes.

{¶ 5} On appeal, Hopkins raises two assignments of error, both arguing that the trial court should not have applied the changes to Ohio's sentencing statutes under the Reagan Tokes Law to determine her maximum period of confinement. We begin our discussion with Hopkins' second assignment of error.

{¶ 6} II. THE GENERAL ASSEMBLY, IN ENACTING SB 201, DID NOT EVINCE AN INTENT TO AMEND THE FINAL TERMINATION CALCULATION OF R.C. 2945.401(J)(1)(b) AND THE TRIAL COURT'S RELIANCE THEREON IN MAKING SUCH CALCULATION WAS ERROR.

{¶ 7} When a defendant charged with a first- or second-degree felony is found incompetent to stand trial, the common pleas court can require the defendant to undergo treatment for up to one year if there is a substantial probability that, with treatment, the defendant will become competent during that time. R.C. 2945.28(B)(1) and (C)(1); *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, ¶ 12. If the one-year period expires and the defendant remains incompetent to stand trial, the court or prosecuting attorney can request that the court retain jurisdiction over the defendant. R.C. 2945.39(A)(2); *Williams* at ¶ 12.

{¶ 8} In order to retain jurisdiction, the trial court must hold a hearing and determine, by clear and convincing evidence, that the defendant committed the offense and that the defendant is a mentally ill person subject to hospitalization by court order. R.C. 2945.39(A)(2)(a) and (b); *Williams* at ¶ 13. If the court makes both findings, the court then commits the defendant to a hospital operated by the Department of Health or another appropriate facility, placing the defendant in the least-restrictive commitment alternative available that is consistent with public safety and the defendant's welfare, while giving preference to protecting public safety. R.C. 2945.39(D)(1).

{¶ 9} A commitment under these circumstances terminates on the earliest of the following: 1) the trial court's determination that the defendant is no longer a mentally ill person subject to hospitalization by court order; 2) the expiration of the maximum prison term the defendant could have received if the defendant had been convicted of the most serious offense charged; or 3) the trial court's termination of the commitment on findings that the defendant is competent to stand trial and is no longer a mentally ill person subject to a court order. R.C. 2945.401(J)(1)(a)-(c); *Williams* at ¶ 17.

{¶ 10} As mentioned above, the trial court followed these procedures and appellant does not allege error in the trial court's decision to commit her for treatment for one year or the court's decision to retain jurisdiction and continue the commitment after the one-year

period. Instead, appellant argues only that the trial court erred in its determination of the maximum time she could remain committed.

{¶ 11} R.C. 2945.401(A) provides that a person "found incompetent to stand trial and committed pursuant to section 2945.39 of the Revised Code * * * shall remain subject to the jurisdiction of the trial court pursuant to that commitment, and to the provisions of this section, until the final termination of the commitment as described in division (J)(1) of this section." In turn, R.C. 2945.401(J) provides the three instances discussed above for terminating a defendant's commitment. The commitment terminates when the person is no longer a mentally ill person, or when a court determines that the defendant is competent to stand trial. R.C. 2945.401(J)(1)(a) and (c). If one of these instances does not occur first, the commitment terminates on "[t]he expiration of the maximum prison term or term of imprisonment that the defendant * * * could have received if the defendant * * * had been convicted of the most serious offense with which the defendant * * * is charged * * * ." R.C. 2945.401(J)(1)(b). Appellant argues the court made an incorrect determination of the "maximum prison term" she could have received if she had been convicted of the most serious offense charged.

{¶ 12} Prior to the Reagan Tokes sentencing amendments, the maximum prison term for aggravated arson, a first-degree felony, was a determinate sentence of 11 years. After the enactment of the Reagan Tokes Law, the Revised Code provides for indeterminate sentences for first- and second-degree felonies for which life in prison is not an available sentence. *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, ¶ 7. The Revised Code now provides definitions of "minimum" and "maximum" terms for first- and second-degree felonies.

{¶ 13} For those offenses committed on or after March 22, 2019, the sentencing statutes provide that in imposing a sentence, the court must choose a minimum prison term

from the basic prison terms provided in R.C. 2929.14. *Id.* To determine the maximum prison term for a single conviction, the sentencing court must add 50% to the minimum term. R.C. 2929.144(B)(1).

{¶ 14} In determining the maximum term of commitment in this case, the trial court considered the sentencing statutes as amended by the Reagan Tokes Law and determined that the maximum prison term for aggravated arson was 16 and one-half years. Appellant argues that the trial court erred in determining the maximum possible sentence because the General Assembly did not evince an intent to apply the Reagan Tokes Law to the commitment termination calculation in R.C. 2945.401(J)(1)(b).

{¶ 15} Appellant argues that the enactment of a new section of the Revised Code, R.C. 2929.144, which describes maximum prison terms, was not designed for calculating the termination of a commitment under R.C. 2945.401(J)(1)(b) because it was not addressed by the General Assembly. Appellant argues that this silence creates an ambiguity, and the principles of statutory construction must be considered.

{¶ 16} We first note that appellant did not raise this issue in the court below, and therefore, on appeal must establish that the trial court's decision was plain error. "Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings." *State v. Buell*, 12th Dist. Fayette No. CA2021-12-026, 2022-Ohio-3102, ¶ 16, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, (2002). Because R.C. 2945.39 is manifestly civil in nature, plain error can only be found in the "extremely rare" case where "exceptional circumstances require its application to prevent a manifest miscarriage of justice" and where the error "would have a material adverse effect on the character of, and public confidence in judicial proceedings." *Goldfuss v. Davidson, 79 Ohio St.3d 116 (1997); see also Williams*, 126 Ohio St.3d at ¶ 34-35 ("R.C. 2945.39 is manifestly civil in its intent").

{¶ 17} Statutory interpretation is a matter of law which this court reviews de novo. *State v. Ashcraft*, Slip Opinion No. 2022-Ohio-4611. The first rule in interpreting a statute is to review the language and determine whether the terms are clear and unambiguous. *State v. Hurd*, 89 Ohio St.3d 616, 2000-Ohio-2. If the language is clear and unambiguous, the court must apply it as written. *Ashcraft* at ¶ 7. When the language is plain and unambiguous and "'conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation,' because 'an unambiguous statute is to be applied, not interpreted.'" *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 8, quoting *Sears v. Weimer*, 143 Ohio St. 312 (1944).

{¶ 18} As mentioned above, the commitment statute, R.C. 2945.401, provides for final termination on the expiration of the maximum prison term the defendant could have received if convicted of the most serious offense with which the defendant is charged. The most serious offense Hopkins was charged with was aggravated arson, a first-degree felony. *See* R.C. 2909.02(A)(1) and (B)(2).

{¶ 19} Section 2929.14 of the Revised Code provides "Basic Prison Terms" and states that for a first-degree felony, the sentence is "an indefinite prison term with a stated minimum term selected by the court of three, four, five, six, seven, eight, nine, ten, or eleven years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code * * *." R.C. 2929.14(A)(1)(a). In turn, Section 2929.144 of the Revised Code, captioned "Maximum Prison Terms," provides that for a person sentenced for one first-degree felony, "the maximum prison term shall be equal to the minimum term imposed on the offender * * * plus fifty percent of that term." R.C 2929.144(B)(1).

{¶ 20} We find that the language at issue is clear and unambiguous. The commitment statute provides that that the length of the commitment is limited to the maximum prison term the offender could have received if convicted of the most serious

offense charged—in this case, first-degree felony aggravated arson. The sentencing statutes provide a framework for determining the maximum sentence and under the plain language of the sentencing statutes, the maximum prison term for first-degree felony aggravated arson is 16 and one-half years.

{¶ 21} Appellant argues that the language is ambiguous because it is silent on whether the Reagan Tokes amendments apply to R.C.2945.401. However, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969. The General Assembly "should be held to mean what it has plainly expressed" not what it meant to do. *Id.*

{¶ 22} Appellant also presents several policy arguments to support her argument that the sentencing amendments should not apply to the commitment statute. However, because the language of the statute is clear and unambiguous, it is not the role of this court to determine whether the sentencing amendments should be used to determine the maximum expiration of a defendant's commitment. See *Turner v. Hooks*, 152 Ohio St.3d 559, 2018-Ohio-556, ¶ 13. Instead, '[t]hat is a matter of policy for the General Assembly to assess." *Id.*

{¶ 23} Finally, appellant argues that a case from the Eighth District Court of Appeals supports her argument that the Reagan Tokes amendments do not apply to R.C. 2945.401. *State v. Young*, 8th Dist. Cuyahoga No. 108868, 2021-Ohio-215. In the case cited by appellant, the appellate court determined that the state did not show that the trial court committed plain error in determining that the Reagan Tokes amendments did not apply to R.C. 2945.401. *Id.*

{¶ 24} However, *Young* is a decision on reconsideration. In the initial decision, the Eighth District determined that the trial court erred in concluding that it had jurisdiction to supervise the defendant's commitment for a maximum of 11 years for a first degree felony

because the "language of the R.C. 2929.14(A) and 2929.144 clearly and unambiguously provide[ ] an indefinite term of 11 to 16 and one-half years." *State v. Young*, 8th Dist. Cuyahoga No. 108868, 2021-Ohio-4135.

{¶ 25} On reconsideration, the appellate court focused on the state's failure to argue, and to show plain error, along with the limited circumstances for finding plain error in a civil case. *Id.* at 13. The court ultimately held that the state had not established that the claimed error "'seriously affects the basic fairness, integrity, or public reputation of the judicial process * * * .'" *Id.* at 22, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). The decision on reconsideration does not involve a statutory analysis. Nor does it discuss "whether an error occurred," which is the first of three requirements for finding plain error. See *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002- Ohio 68, 759. In addition, it was the state, not the defendant in that case who had the high burden of establishing plain error. Thus, we find that *Young* is distinguishable from the case before us.

{¶ 26} Accordingly, we find that the language of the statutes at issue is clear and unambiguous and therefore, appellant has failed to establish plain error in the trial court's decision. Appellant's second assignment of error is overruled.

{¶ 27} II. THE TRIAL COURT'S UTILIZATION OF SB 201 IN CALCULATING THE FINAL TERMINATION OF HER CIVIL COMMITMENT AS SET FORTH IN R.C. 2945.401(J)(1)(b) VIOLATED HER RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ART. 1 §16 OF THE OHIO CONSTITUTION

{¶ 28} In her first assignment of error, appellant argues that the trial court's use of the Reagan Tokes amendments violated her right to due process. "A civil commitment for any purpose is a significant deprivation of liberty and due process protections must be afforded to a person facing involuntary commitment." *Williams*, 126 Ohio St.3d at ¶ 54,

citing *Addington v. Texas* (1979), 441 U.S. 418, 99 S.Ct. 1804.

{¶ 29} Appellant contends that extending her maximum term of commitment by 5 and one-half years would be based on conduct that she has not, and cannot engage in. This argument is based on other statutory provisions providing a presumption that a criminal defendant will be released at the expiration of the minimum sentence unless the Ohio Department of Rehabilitation and Corrections determines that the defendant has engaged in certain behavior. *See* R.C. 2967.271(B).

{¶ 30} However, appellant's due process argument is based on the premise that the language of the statutory provisions is ambiguous, while we have determined that the plain language of the statutes is clear and unambiguous. Because the statutes clearly define the maximum prison term, we cannot delve further into the policy arguments presented. "Once the trial court imposes minimum and maximum prison terms * * * the sentence for the offender has been set." *Hacker* at ¶ 16. Therefore, the mechanics under which a criminal defendant is released from prison is irrelevant to determining the "maximum prison term" as defined by the Revised Code.

{¶ 31} Moreover, as discussed by the Ohio Supreme Court in finding that the commitment statutes at issue do not violate due process, "'although * * * a defendant may be committed until the expiration of the maximum term of imprisonment that he could have received for the charged offense, due process is satisfied by the fact that he may be released sooner if he is no longer subject to hospitalization by court order.'" *Williams* at ¶ 62, quoting *State v. Williams*, 179 Ohio App.3d 584, 2008-Ohio-6245, ¶ 90 (2d Dist.) (Wolff, P.J. dissenting). In this case, appellant's commitment will end sooner than 16 and one-half years if she is no longer a mentally ill person subject to a court order.

{¶ 32} Accordingly, we find no merit to appellant's argument that her due process rights are violated and her first assignment of error is overruled.

{¶ 33} Judgment affirmed.

PIPER, J., and BYRNE, J., concur.